IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LAUREN LUCERO, *on behalf of herself and all other similarly situated*,<br><br>*Plaintiffs,*<br>v.<br><br>ATOMIC PROVISIONS LLC<br><br>*Defendant.* | Case No.:<br><br><br><br><br>CLASS ACTION<br>COLLECTIVE ACTION |

# COMPLAINT

Lauren Lucero, on behalf of herself and all others similarly situated ("Plaintiffs"), by and through counsel, and for their complaint against Atomic Provisions LLC ("Defendant," "Atomic Provisions" or "Restaurant Group"), hereby states and alleges as follows.

## PRELIMINARY STATEMENT

1. Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against Atomic Provisions for unpaid minimum wage and overtime compensation and related penalties and damages.

2. Upon information and belief, Atomic Provisions LLC, is a restaurant group comprised of the following restaurants: (a) Atomic Cowboy, (b) The Denver Biscuit Company, (c) Lights Out, (d) Fat Sullys; and (e) Frozen Gold.

3. At all times relevant to this action, the restaurants that make up Atomic Provisions (listed above) shared common ownership and control. Accordingly, Atomic Provisions adopted substantially similar wage payment policies at each location.

4. Defendant's policies and practices are to deny minimum wages and overtime pay to servers/bartenders working at its restaurants. Defendant's failure to pay employees their earned wages and overtime compensation violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Missouri Minimum Wage Maximum Hours Laws, RSMo § 290.500, *et. seq.*, the Colorado Wage Claim Act, § 8-4-101, *et seq.* (the "Wage Claim Act"), and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Order and/or Overtime and Minimum Pay Standards Order (the "Minimum Wage Order") contain various rules regarding employee wages and hours.

5. Plaintiffs work and/or previously worked as servers/bartenders for Atomic Provisions.

6. This lawsuit is brought as a hybrid collective and class action pursuant to 29 U.S.C. § 216(b) of the FLSA, the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500, *et seq.*, the Colorado Wage Claim Act, § 8-4-101, *et seq.* (the "Wage Claim Act"), and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.,* and Fed. R. Civ. P. 23.

**JURISDICTION AND VENUE**

7. This court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*

8. This Court has supplemental subject matter jurisdiction over the Plaintiffs' Missouri Minimum Wage Law ("MMWL"), Colorado Wage Claim Act, § 8-4-101, *et seq.* (the "Wage Claim Act"), and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.* claims and

claims under Missouri common law pursuant to 28 U.S.C. § 1367, because the claims arising under Missouri state law are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

9. This court has personal jurisdiction because Atomic Provisions has been conducting business in Jackson County, Missouri, and the Plaintiffs were employees, working for Atomic Provisions, within this judicial district.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) inasmuch as the Atomic Provisions conducts business and has substantial business contacts in Jackson County, Missouri, and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Atomic Provisions owns and/or operates multiple restaurants in this area.

**PARTIES**

11. At all times relevant to this action, the Plaintiffs were employed as servers/bartenders for various restaurants within the Atomic Provisions.

12. Upon information and belief, Atomic Provisions LLC, is a restaurant group comprised of the following restaurants:

   a. Atomic Cowboy

   b. The Denver Biscuit Company

   c. Lights Out

   d. Fat Sullys; and

   e. Frozen Gold

13. At all times relevant to this action, the restaurants compromising the Atomic Provisions group were authorized to do business and was in fact doing business in the states of Missouri and Colorado.

14. Specifically, Atomic Provisions owns and/or operates the following Restaurants:

    a. Atomic Cowboy located at

        i. Westport, Kansas City, MO

        ii. Colorado Springs, CO

        iii. Aurora, CO

        iv. Colfax, Ave., Denver, CO

        v. S. Broadway, Denver, CO

        vi. Tennyson, St., Denver, CO

        vii. Centennial, CO

    b. Denver Biscuit Company

        i. Westport, Kansas City, MO

        ii. Colorado Springs

        iii. Aurora, CO

        iv. Colfax, Ave., Denver, CO

        v. S. Broadway, Denver, CO

        vi. Tennyson, St., Denver, CO

        vii. Centennial, CO

    c. Fat Sully's

        i. Westport, Kansas City

        ii. Colorado Springs

iii. Centennial, CO

15. At all times relevant to this action, Defendants were authorized to do business and were in fact doing business in the State of Missouri and Colorado.

16. Plaintiff, Laura Lucero, worked at Atomic Cowboy, from approximately March 2023 until June 2023.

17. At all times relevant to this action, the Atomic Provisions Restaurant Group was the employer of Plaintiffs and all other similarly situated employees and is thus liable to Plaintiffs and all others similarly situated as an employer, joint employer, single employer, and/or otherwise, according to statutory and common law.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

18. Plaintiffs bring Count I, the FLSA claim for servers/bartenders, as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and of the following class of persons:

> All Atomic Provisions servers/bartenders employed by Atomic Provisions within three years of the commencement of this action who have not been paid minimum wage for all hours worked and/or have not been properly paid overtime compensation at one-and-one-half times the minimum wage for all work performed in excess of 40 hours per week.

19. Plaintiffs bring their state law claims in Count II (violation of Mo. Rev. Stat. 290.500, *et. seq.*), Count III (violation of the Colorado Wage Claim Act §8-4-101, *et seq.*), Count IV (violation of the Colorado Minimum Wage Act, §8-6-101, *et seq.*) and Count V (unjust enrichment/quantum meruit) as class actions pursuant to Fed. R. Civ. P. 23. Plaintiffs, individually and on behalf of others similarly situated, seek relief on a class basis challenging Atomic Provisions' practice of compensating Plaintiffs and others similarly situated. The Rule 23 class

5

under Mo. Rev. Stat. § 290.500, *et seq.* is defined as:

> All Atomic Provisions servers/bartenders employed by Atomic Provisions in the state of Missouri within three years of the filing of this action.

The Rule 23 class under Missouri common law is defined as:

> All Atomic Provisions servers/bartenders employed by Atomic Provisions in the state of Missouri within five years of the filing of this action.

20. The class satisfies the numerosity standards in that the class numbers well into the hundreds or thousands. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct and electronic mail as well as notice posted in the restaurant.

21. There are questions of fact and law common to the classes that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Atomic Provisions' actions include, without limitation, the following:

   a. Whether all class members were paid based on the "tip credit."

   b. Whether Atomic Provisions was entitled to take from class members' tips a credit against minimum wages for some or all of the hours worked by the class members.

   c. Whether Atomic Provisions recorded the amount of time spent performing non-tip-producing activities.

   d. Whether Atomic Provisions knew or had reason to know its policies and compensation practices were unlawful.

   e. Whether Atomic Provisions retained a benefit from such unlawful policies and compensation practices.

22. The aforementioned common questions, among others, predominate over any questions affecting individual persons, and a class action is proper, as it will achieve and promote

consistency, economy, efficiency, fairness, and equity.

23. The named Plaintiffs' claims are typical of those of the class in that class members have been paid pursuant to the same compensation structure as the named Plaintiffs and were subject to the same or similar unlawful practices as the Plaintiff.

24. A class action is an appropriate method for the fair and efficient adjudication of this controversy. Atomic Provisions has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members would create a risk of inconsistent and varying results, risk the establishment of incompatible standards of conduct for Atomic Provisions, and/or substantially impair or impede the ability of class members to protect their interests.

25. The named Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the members of the class will be fairly and adequately protected by the named Plaintiffs acting as class representatives and by their undersigned counsel, who have experience in employment and class action lawsuits.

26. Maintenance of this action as a class action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a class action can determine the rights of all class members in conformity with the interests of efficiency and judicial economy.

27. The FLSA claim may be pursued by those who opt in to this case, pursuant to 29 U.S.C. § 216(b).

28. Plaintiffs, individually and on behalf of all other similarly situated employees, seek relief on a collective basis challenging Atomic Provisions' FLSA violations. The number and identity of other plaintiffs yet to opt in and to consent to be party plaintiffs may be determined from the records of the Atomic Provisions, and potential class members may easily and quickly be notified of the pendency of this action.

29. To the extent required by law, notice will be provided to said individuals via first-class mail, email, and/or by the use of techniques and a form of notice similar to those customarily used in representative actions.

## COUNT I
## Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

30. Plaintiff realleges the allegations as set forth above.

31. At all times relevant to this action, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

32. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

33. Atomic Provisions is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

34. At all times relevant to this action, Atomic Provisions has been and continues to be an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

35. At all times relevant to this action, Atomic Provisions has employed and/or continues to employ "employee[s]," including Plaintiffs and all similarly situated employees.

36. At all times relevant to this action, Atomic Provisions has had gross operating revenue in excess of $500,000 (Five Hundred Thousand Dollars).

37. Plaintiffs were employed by Atomic Provisions. During this time frame, Plaintiffs performed work for Defendants in the position of server/bartender.

38. During the statutory period, Plaintiffs were paid an hourly wage ranging from $4.30 per hour to $5.78 per hour and received tips.

39. Prior to and during the Plaintiffs' employment with Atomic Provisions, Atomic Provisions employed numerous other servers/bartenders who had the same job duties and compensation structure as did Plaintiffs.

40. Plaintiffs and all similarly situated employees have substantially similar job requirements and pay provisions, and they are subject to Atomic Provisions' common policy and practice of refusing to correctly pay minimum wages and overtime wages in violation of the FLSA.

41. The FLSA requires employers such as Atomic Provisions to pay all non-exempt employees overtime compensation, at a rate of not less than one-and-one-half times the minimum wage, for work performed in excess of 40 hours in a workweek.

42. Plaintiffs and all similarly situated employees are not exempt from the right to receive the federal minimum wage and overtime pay under the FLSA and are not exempt from the requirement that their employer pay them minimum wage and/or overtime compensation under the FLSA.

43. At all times relevant to this action, Atomic Provisions had a policy and practice of failing to properly pay minimum wages, and because Atomic Provisions has violated the rules for using the tip credit, including by requiring servers/bartenders to spend more than 20 percent of

their time engaged in non-tip-producing activities. Atomic Provisions has also had a policy of not paying for all overtime hours worked.

44. Additionally, for at least part of the statutory period, upon information and belief, Defendants failed to provide the proper notice, pursuant to 29 C.F.R. § 531.59, to its employees paid under the tip credit that would permit them to take a credit against the Federal Minimum Wage requirements.

45. Atomic Provisions' failure to properly compensate Plaintiffs and all others similarly situated under the tip credit rules and overtime rules constitutes a violation of the FLSA's minimum wage requirements, 29 U.S.C. §201, *et. seq.*

46. Atomic Provisions' violation of the FLSA is continual in nature in that Atomic Provisions continues to pay its servers/bartenders under the same unlawful policies and procedures that are set forth in detail herein.

47. Atomic Provisions' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

48. Atomic Provisions has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the court find Defendant did not act willfully in failing to pay overtime pay, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

49. As a result of the aforesaid violations of the FLSA's tip credit and overtime pay provisions, proper minimum wage and overtime compensation have been unlawfully withheld by

Atomic Provisions from Plaintiffs and all similarly situated employees. Accordingly, Plaintiffs and all others similarly situated seek damages in the amount of all respective unpaid minimum wage and overtime, plus liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees, costs, and expenses incurred in this action, to be paid as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the court deems just and proper.

**WHEREFORE**, Plaintiffs and all similarly situated employees demand judgment against Atomic Provisions and pray this court:

    a.    Issue notice to all similarly situated employees of Atomic Provisions informing them of their right to file a consent to join the FLSA portion of this action.

    b.    Award Plaintiffs and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b).

    c.    Award Plaintiffs and all similarly situated employees prejudgment and post-judgment interest as provided by law.

    d.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs as allowed by 29 U.S.C. § 216(b).

    e.    Issue a declaration that Atomic Provisions has violated state and federal laws.

    f.    Award Plaintiffs and all similarly situated employees such other relief as the court deems fair and equitable.

**COUNT II**
**FAILURE TO PAY WAGES PURSUANT TO MO. REV. STAT. § 290.500, *et. seq.***

50. Plaintiffs realleges the allegations as set forth above.

51. Plaintiffs and other similarly situated employees were employed by Atomic Provisions and were paid wages below Missouri's minimum wage. All such employees are hereby referred to as "similarly situated" employees or "putative class members."

52. Said work often required Plaintiffs and the putative class to work in excess of 40 hours per week.

53. Plaintiffs and the putative class were not properly compensated for this work at the applicable rate of pay.

54. Plaintiffs and the putative class were treated as nonexempt employees by Atomic Provisions under the Missouri wage statutes.

55. Atomic Provisions employs/employed other employees at its restaurants who are/were paid below Missouri's minimum wage requirements and are/were treated as non-exempt employees under the Missouri wage statutes.

56. These similarly situated employees were compensated at a rate ranging between $3.93 and $5.78 per hour in Missouri, regardless of activity and regardless of the fact they regularly spent more than 20 percent of their time performing non-tip-producing activities.

57. During the pertinent time periods, the proper rate of pay under Missouri wage laws ranged from $7.85 to $11.15 per hour.

58. Said work often caused similarly situated employees to work in excess of 40 hours per week. These similarly situated employees were not properly compensated for this work at the applicable rate of pay.

59. The Missouri wage laws require each covered employer, such as the Atomic Provisions, to compensate all non-exempt employees for services performed at the proper rate of pay and to compensate them at a rate of not less than one-and-one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek.

60. These employees are similarly situated in that they are all subject to Atomic Provisions' identical compensation policies and plan that fail to compensate them with full

minimum wage for time, including the time they spend engaged in non-tip-producing activities that exceed 20 percent of their work.

61. These employees are also similarly situated in that they are all subject to Atomic Provisions' identical compensation policies and plan that requires them to spend more than 20% of their work day or work week engaged in non-tip-producing activities but are paid at the tipped wage rate.

62. This petition is brought and maintained as a class action for all state law claims asserted by the Plaintiffs because their claims are similar to the claims of the putative class members.

63. The names and addresses of the putative class members are available from Atomic Provisions. Atomic Provisions failed to compensate Plaintiffs and the putative class members at the proper rate of pay, and therefore, Atomic Provisions has violated, and continues to violate, the Missouri wage laws, Mo. Rev. Stat. § 290.500, *et. seq.,* including 8 C.S.R. 30-4.010 and 8 C.S.R. 30-4.020 (2).

64. Plaintiffs, on behalf of themselves and all similarly situated employees of Atomic Provisions who compose the putative class, seek damages in the amount of all respective unpaid minimum wages and straight time plus overtime compensations at a rate of one-and-one-half times the proper and legal rate of pay for work performed in excess of 40 hours in a workweek, plus liquidated damages in an amount equal to twice the unpaid wages, as provided by the Missouri wage-and-hour laws and such other legal and equitable relief as the court deems just and proper.

65. Plaintiffs, on behalf of themselves and all similarly situated employees of Atomic Provisions who compose the putative class, seeks recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Atomic Provisions, as provided by Mo. Rev. Stat. 290.500,

*et. seq.*

**WHEREFORE**, Plaintiffs, on behalf of themselves and all proposed class members, prays for relief as follows:

a. Designation of this action as an action on behalf of the proposed putative class members and prompt issuance of notice to all putative class members (the Missouri Wage Law class), apprising them of the pendency of this action.

b. Designation of the named Plaintiffs as Representatives, acting for and on behalf of the putative class members.

c. A declaratory judgment that the practices complained of herein are unlawful under the Missouri wage-and-hour laws, Mo Rev. Stat. 290.500, *et seq.* and an injunction against the same.

d. An award of damages of the full amount of the wage rate and an additional amount of liquidated damages equal to twice the unpaid wages, less the amounts actually paid to Plaintiffs and the putative class by Atomic Provisions.

f. Costs and expenses of this action incurred herein.

g. Reasonable attorneys' fees and expert fees.

h. Prejudgment and post-judgment interest, as provided by law.

i. Any and all such other and further relief as this court deems necessary, just, and proper.

## COUNT III
## VIOLATION OF THE COLORADO WAGE CLAIM ACT, §8-4-101, *Et Seq.*

66. Plaintiffs realleges the allegations as set forth above.

67. At all relevant times, the Defendant has been, and continues to be, an "employer" within the meaning of the Colorado Wage Claim Act.

68. At all relevant times, each Defendant has employed, and/or continues to employ, "employees", including Plaintiff, within the meaning of the Wage Claim Act

69. Defendants employed plaintiff.

70. At all times during his employment, Defendants took the tip credit against Plaintiff's hourly wage.

71. During the pertinent time periods, the proper rate of pay under Colorado wage laws ranged from $7.18 to $10.63 per hour.

72. As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages due under the Wage Claim Act, Minimum Wage Order and FLSA thereby violating, and continuing to violate, the Wage Claim Act. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

73. As a result, Plaintiff and Class Members have been damaged in an amount to be determined at trial. Plaintiff hereby demands payment on behalf of themselves and all Class Members in an amount sufficient to reimburse all tip credits taken against their wages as well as all compensation owed for unpaid minimum wages. This demand for payment is continuing and is made on behalf of any current employees of Defendants whose employment terminates at any time in the future.

## COUNT IV
## VIOLATION OF THE COLORADO MINIMUM WAGE ACT, §8-6-101, *Et Seq.*

1. Plaintiffs realleges the allegations as set forth above.

2. At all relevant times, the Defendant has been, and continues to be, an "employer" within the meaning of the Colorado Wage Claim Act.

3. At all relevant times, each Defendant has employed, and/or continues to employ, "employees", including Plaintiff, within the meaning of the Wage Claim Act

4. Defendants employed plaintiff.

5. During the pertinent time periods, the proper rate of pay under Colorado wage laws ranged from $7.18 to $10.63 per hour.

6. As a result of the foregoing conduct, as alleged, Defendants have violated, and continue to violate, the Minimum Wage Act. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

7. As a result, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT V
## QUANTUM MERUIT/UNJUST ENRICHMENT

8. Plaintiffs realleges the allegations as set forth above.

9. Atomic Provisions has been and is being enriched by making deficient payments for work performed by Plaintiffs and other similarly situated employees. Atomic Provisions has been and is being enriched at the expense of Plaintiffs and other similarly situated employees because Plaintiff and others were not properly compensated for their work.

10. Atomic Provisions intentionally refused to pay Plaintiffs and other similarly situated employees at the proper rate for all hours worked. Atomic Provisions knows or should know the proper rate of pay for Plaintiffs and other similarly situated employees. Such wrongful conduct demonstrates bad faith on the part of the Atomic Provisions.

11. It is unjust for Atomic Provisions to retain the benefits from the unpaid work performed by Plaintiffs and other similarly situated employees.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all proposed class members, pray for relief as follows:

a. Designation of this action as an action on behalf of the proposed putative class members and prompt issuance of notice to all putative class members (the Missouri Wage Law class) apprising them of the pendency of this action.

b. Designation of the named Plaintiffs, acting for and on behalf of the putative class members.

c. A declaratory judgment that the practices complained of herein are unlawful and an injunction against the same.

d. An award of restitution of the full amount of the wage rate and an additional equal amount as liquidated damages, less the amounts actually paid to Plaintiffs and the putative class by Defendants.

f. Costs and expenses of this action incurred herein.

g. Reasonable attorneys' fees and expert fees.

h. Prejudgment and post-judgment interest, as provided by law.

i. Any and all such other and further relief as this court deems necessary, just, and proper.

Respectfully submitted,

HKM EMPLOYMENT ATTORNEYS LLP

/s/ *John J. Ziegelmeyer III*

| | |
|---|---|
| John J. Ziegelmeyer III | MO No. 59042 |
| Brad K. Thoenen | MO No. 59778 |
| Kevin A. Todd | MO No. 73048 |
| Ethan A. Crockett | MO No. 74921 |

1501 Westport Road
Kansas City, MO 64111
Tel: 816.875.3332
jziegelmeyer@hkm.com
bthoenen@hkm.com
ktodd@hkm.com
ecrockett@hkm.com
www.hkm.com

**The Hodgson Law Firm, LLC**

By: /s/ Michael Hodgson
Michael Hodgson   MO Bar No. 63677

3609 SW Pryor Road
Lee's Summit, MO 64082
Tel: 816.600-0117
Fax: 816.600-0137
mike@thehodgsonlawfirm.com

ATTORNEYS FOR PLAINTIFF